UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN GOODRICK,<br><br>     Plaintiff,<br><br>vs.<br><br>JEFF ZMUDA, KEITH YORDY, GARRETT COBURN, BRETT PHILLIPS, ALAN STEWART, and JILL WHITTINGTON,<br><br>     Defendants. | Case No. 1:17-cv-00104-BLW<br><br>**INITIAL REVIEW ORDER** |

The Complaint and subsequent Amended Complaint of Plaintiff Dan Goodrick were conditionally filed by the Clerk of Court due to Plaintiff's status as an inmate and his request for in forma pauperis status. The Court is required to review the pleadings to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. Having reviewed the record, the Court enters the following Order.

## REVIEW OF COMPLAINT

**1. Standard of Law for Review of Prisoner Complaints**

Each complaint filed by a prisoner seeking relief against a governmental entity or its employees must be reviewed by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which

relief can be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id*.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

The Court's review of the Complaint is governed by two United States Supreme Court cases requiring a plaintiff to state facts, and not just legal theories, in a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Court made it clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. The United States Court of Appeals for the Ninth Circuit explained that these cases set forth two important pleading standards:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

2. **Summary of Allegations**

Plaintiff is an Idaho Department of Correction (IDOC) inmate housed at the Idaho State Correctional Institution (ISCI). The claims are about the manner in which two

outgoing letters were handled by prison staff. It is helpful to know the prison's mail policy as part of the background of the claims.

In Idaho, the prison gives indigents four free stamped envelopes per month, which they are free to use as they desire. The prison also provides four additional mailing envelopes (but no postage) per month for "'confidential' correspondence as defined in section 9," which includes "public interest groups … providing assistance to inmates." Standard Operating Procedure (SOP) 402.02.01.001(9).[1]

The prison also mails out almost all "legal mail" for indigent prisoners for free. IDOC has a broad written policy and procedure regarding "legal mail." SOP 405.02.01.001(19), governing access to courts, defines "legal mail" as "[c]onfidential communication directly between (a) an inmate and an attorney (for the purposes of seeking or providing legal services only), (b) an inmate and the court, (c) opposing parties for service of documents pursuant to court rules, or (d) third parties for service of documents pursuant to court rules." SOP 402.02.01.001, governing mail handling, defines "legal mail" the same way. Therefore, the SOP appears to encompass Plaintiff's efforts to provide confidential information to attorneys by letter to solicit legal help.

On December 26, 2016, Plaintiff wrote two letters to the American Civil Liberties Union (ACLU), one to Stephen L. Pevar (addressed to the ACLU office in Connecticut), and one to the local ACLU office in Boise. Plaintiff did not have an attorney-client-privileged relationship with either ACLU attorney's office at the time he sent the letters,

---

[1] The Court takes judicial notice of the Idaho Department of Correction's Standard Operating Procedures, a public record.

but was seeking legal advice on future prisoner civil rights litigation. Plaintiff attempted to have these items classified as "legal mail," which is free to prisoners.

Prison staff did not classify the letters as the type of legal mail that is free to prisoners, but rejected the letters (correctly noting that Pevar was not an attorney licensed in Connecticut, the state where the letter was addressed, but failing to recognize that Pevar has been the national staff counsel for the ACLU for about 40 years and has performed much prisoner litigation in Idaho, regardless of his state of licensure). Prison staff notified Plaintiff that he had to provide his own postage for the two letters.

### 3. First Amendment Mail Claim—Asserted Right to Free Postage

Prisoners enjoy a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401 (1989). As noted above, in Idaho, the prison provides indigent prisoners with a separate supply of four postage-stamped envelopes per month to use for nonlegal mail, and an envelope for non-legal confidential mail. There is no case law suggesting that the prison must expend an unlimited amount of (or, for that matter, *any*) taxpayer money on postage for prisoners to search for lawyers to give them advice about possible future civil rights litigation or for any other reason that does not fit within case law governing access to the courts (discussed separately below).

In Plaintiff's case, the mailroom staff's interpretation of "legal mail" appears inconsistent with the SOP; however, it is consistent with the United States Constitution. Plaintiff believes he has the right to require the prison to pay for him to send correspondence about possible future litigation to the ACLU attorneys with whom he does not have an attorney-client relationship. He further asserts that this right should be

extended to state and federal agencies and their employees. Regarding Plaintiff's two letters of solicitation, prison staff more narrowly defined "legal mail" qualifying for free postage as mail between a prisoner and an attorney who actually represents the inmate, mail the prisoner sends to the court, and mail the prisoner must serve on opposing counsel or third parties in the course of litigation. There is nothing in this narrower definition that offends the Constitution. Simply treated as a First Amendment right-to-send-and-receive-mail claim, the Idaho policy of not mailing letters for free that are not pursuant to an established attorney-client relationship or not required by current litigation, as applied to Plaintiff, complies with the constitutional standards. *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) ("There is no established minimum requirement that a state must meet in order to provide indigent inmates with adequate access to the courts. Instead, a reviewing court should focus on whether the individual plaintiff before it has been denied meaningful access."), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012).

Plaintiff's facts fail to state a plausible claim upon which relief can be granted. The Court now reviews the claim construed as an access-to-courts claim.

### 4. First Amendment Access to Courts Claim

An inmate has a constitutional right to access the courts, *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977), and may recover for denial of that right in a civil rights lawsuit if he or she can demonstrate that an actual injury occurred as a result of the denial. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). The right to access the courts is a

limited one, aimed at ensuring that prisoners may initiate legitimate petitions challenging their criminal convictions and complaints alleging civil rights violations. *See id.* at 354. In *Bounds*, the United States Supreme Court clarified that, while "States [must] shoulder affirmative obligations to assure all prisoners meaningful access to the courts," including "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them … [t]his is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access." 430 U.S. at 824-25. Indeed, "a state may adopt reasonable postage stamp regulations." *King*, 814 F.2d at 568. That is, each prison may adopt reasonable regulations or practices to balance the rights of prisoners with public budgetary concerns, even though they may impinge on a prisoner's mailing rights, as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Thornburgh*, 490 U.S. at 413.

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002). To state an access to courts claim when a prisoner alleges that he suffered the loss of a suit that cannot now be brought, a prisoner must allege facts supporting a plausible inference that: (1) official acts that frustrated the inmate's litigation; (2) Plaintiff suffered the loss of a "nonfrivolous" or "arguable" underlying claim that is set forth in the Complaint, including the level of detail necessary "as if it were being independently pursued"; (3) and the remedy sought in the access to

courts claim is not otherwise available in a suit that otherwise could be brought. *Id*. at 415-17.

Under *Bounds*, prisoners must be provided with postage stamps at state expense to mail legal documents and correspondence. *Id*. at 824–25. *Bounds* has not been interpreted to require prisons (and taxpayers) to pay for an unlimited amount of any type of "legal mail" for prisoners.

Plaintiff's Amended Complaint fails to state an access to courts claim. SOP 405.02.01.001 (9), governing access to courts, entitled "right to retain counsel," reads, "This SOP is not intended to interfere with an inmate's right to retain counsel." However, the "right to retain counsel" under the Sixth Amendment is a right recognized only in criminal matters. There is no clear constitutional "right" to solicit attorneys for civil matters.

Moreover, even if attorney solicitation letters are considered "legal mail," Plaintiff has failed to state facts raising a plausible inference of an actual injury, with the specificity required by *Christopher*. Plaintiff alleges only that, he "has not been able to seek legal advice and assistance thereby causing irreparable damage and the loss of viable claims." (Dkt. 7, p. 2.) Without more, Plaintiff cannot proceed on an access to courts claim.

Finally, a civil rights claim cannot be based solely on allegations that prison officials do not follow their own policies and procedures. This Court echoes the conclusion of the United States District Court in Georgia in a similar case: "It is not the function of this Court to review regulations established by prison authorities unless a

constitutional violation is presented." *Lowrey v. Walton County Sheriff's Dept.*, 2008 WL 660332, *3 (M.D. Ga. 2008).

### 5. Free Speech and Expression Claims

Plaintiff asserts, without any factual basis, that the prisons are violating his free speech and expression rights by not providing him with additional stamps to be able to correspond with people outside prison. No facts or case law support such a cause of action.

Plaintiff also alleges that prison officials' decision to require him to mail his letters to the ACLU via regular mail subjects the letters to "seizure, search, reading, copying, censorship—all being done outside of Plaintiff's presence or without his knowledge or consent, contrary to the constitutional rules of inspection of legal mail. The law recently has been clarified that prison officials may inspect, but not read, a prisoner's outgoing legal mail, and must perform the inspection in the prisoner's presence. *See Nordstrom v. Ryan*, 856 F.3d 1265 (9th Cir. 2017).

As to non-legal mail, the United States Supreme Court has emphasized that "freedom from censorship is not equivalent to freedom from inspection or perusal," a standard of law that permits prison officials to monitor and scan confidential mail. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

It is an open legal question whether the *Nordstrom* rule prohibiting the reading of outgoing legal mail to a licensed attorney would apply to prisoner letters soliciting an

attorney's help in a civil matter.[2] In this case, insufficient facts are included to show whether Plaintiff's two letters were eventually mailed out with his own postage, and, if so, whether prison officials first read them, rather than merely inspect them For example, SOP 402.02.01.001(9) provides that outgoing prisoner mail to "public interest groups or government entities providing assistances for inmates … is treated as confidential, [but] is monitored for contraband and other items that night threaten the safety of the recipient."

Plaintiff has done nothing but make bare conclusory statements supporting his censorship claims. If he desires to amend his Amended Complaint to provide concrete factual allegations supporting a free speech/free expression claim, he may do so. If he has no such facts, he should not assert such a claim.

### 6.     Freedom of Association Claim

Plaintiff alleges that the prison's decision to provide only four stamps per month—requiring him to choose between corresponding with family and friends or corresponding with lawyers potentially interested in his case is a violation of his First Amendment freedom of association right. The United States Supreme Court has observed that

---

[2] The attorney-client privilege is a rule of evidence; it has not yet been held a constitutional right. *See Maness v. Meyers,* 419 U.S. 449, 466 n. 15 (1975); *Beckler v. Superior Court*, 568 F.2d 661, 662 (9th Cir. 1978). In criminal cases, government interference with the confidential relationship between a defendant and his counsel may implicate Sixth Amendment rights. *See, e.g., Weatherford v. Bursey*, 429 U.S. 545 (1977). Such an intrusion violates the Sixth Amendment only when it substantially prejudices the defendant. *United States v. Irwin,* 612 F.2d 1182, 1186-87 (9th Cir. 1980); *see United States v. Glover*, 596 F.2d 857, 863-64 (9th Cir.), *cert. denied*, 444 U.S. 860 (1979). Here, there are no allegations that Plaintiff was pursuing a criminal matter with his ACLU letters.

"freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

As discussed above, there is no right to receive free postage stamps for mail to family or friends. Despite being under no compulsion to do so, the prison provides four stamps per month for that purpose. Plaintiff has stated no plausible federal claim under a freedom of association theory for having to choose how to use his gratuitously-provided stamps.

### 7. Fourteenth Amendment Due Process

Plaintiff also alleges that withholding of the two stamps for the ACLU letters violated his due process rights. The legal concept of substantive due process protects individuals from being deprived of certain important interests, quite apart from the question of whether particular procedures were followed (which is a separate procedural due process issue). *Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988). As a threshold matter, "[t]o establish a substantive due process claim a plaintiff must … show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998); *see City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 198 (2003) (noting threshold requirement of identifying property interest).

In addition, a substantive due process violation is one that "shocks the conscience." *Wood v. Ostrander*, 879 F.2d 583, 591 n.8 (9th Cir. 1989). It occurs in a situation in which "the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1484 (9th Cir. 1989); *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) (observing that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense'").

Here, Plaintiff must plausibly allege that he has a liberty interest in contacting individuals in the outside world to aid him in determining whether he has a potential legal claim. While there is a liberty interested in sending and receiving mail, *see Procunier v. Martinez*, 416 U.S. 396, 418 (1974), there is no identified liberty interest in free stamps to solicit legal help for future prisoner civil rights actions.

Further, providing prisoners with four free stamps per month at taxpayer expense and requiring him to choose how to use those stamps each month for "nonlegal" mail clearly is not government action that shocks the conscience or that has no substantial relation to general welfare. Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

### 8. Fourteenth Amendment Equal Protection

Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Plaintiff has provided no factual allegations of a discriminatory intent in his Complaint, such that a strict scrutiny analysis would apply. *See Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1952 (2009) (to avoid dismissal of complaint, plaintiff must allege facts showing or intimating discrimination because of race, religion, or national origin).

Neither has Plaintiff provided any facts under which he could proceed on a rational basis theory. Under a rational basis inquiry, Plaintiff must state facts alleging that he was similarly situated to others and was treated in a disparate manner, and that there was no rational basis for the disparate treatment. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993). The pleadings contain no facts showing that other indigent prisoners were treated differently from him. Hence, he has failed to state an equal protection claim.

### 9.     Miscellaneous Allegations

Without any context, but perhaps in the course of Plaintiff's filing of this action, Plaintiff contends that the prison paralegal Alan Stewart refused to provide him with a correct printout of his prison trust account statement. It appears that Plaintiff is complaining that the printout filed in this case at Docket 6 shows zero in Plaintiff's account, and it should show -93.30. (Dkt. 7-1, pp. 4-5.) Either zero or a negative amount qualifies a prisoner for in forma pauperis status. This is a nonissue. Plaintiff has provided no facts supporting his conclusory statement that, by giving Plaintiff a statement that showed zero instead of a negative number, Stewart was trying to "impede Plaintiff's access to the Court and attempt to get the civil action against him and his colleagues dismissed because of submission of an untrue document or trust account." (Dkt. 7-1, 0. 5.) This is an implausible allegation because the zero-balance trust account statement is signed and dated by a prison official. How any type of fraud could be attributable to Stewart under these circumstances is unclear.

Plaintiff further contends that Defendants colluded together and failed to respond to his grievance appeals in an attempt to "den[y] Plaintiff the right to exhaust his administrative remedies [and] … den[y] Plaintiff access to the Court." (Dkt. 7-1, p. 7.) Plaintiff has not provided sufficient allegations to support such a claim. Moreover, the United States Court of Appeals for the Ninth Circuit has held that "[t]here is no legitimate claim of entitlement to a [jail] grievance procedure" under the First Amendment. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988).

While it is true that "the right of meaningful access to the courts extends to established jail grievance procedures," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), Plaintiff has stated no facts supporting such a claim. To pursue a claim that prison officials interfered with or prevented an inmate's grievance from being processed, an inmate must adequately allege that he suffered an actual injury in being able to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 348 (1996). Alleging that a delay or injury occurred within the grievance process that did not affect the actual ability to bring the claim in court does not state a claim. Plaintiff may not proceed on this claim at this time, but may amend at a later date if he has additional facts that would state a claim.

10.   **Conclusion**

For the reasons set forth above, Plaintiff's Amended Complaint is subject to dismissal for failure to state a claim upon which relief can be granted. If he believes he can state a plausible claim, he may file a Second Amended Complaint, but he is warned that he may be subject to a strike under 28 U.S.C. § 1915(g) if he once again fails to state

a claim.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's case is DISMISSED with leave to amend.

2. Plaintiff's request for a temporary restraining order (contained in the Amended Complaint) is DENIED, because the Amended Complaint fails to state a claim upon which relief can be granted.

3. Plaintiff's Request for Status of Initial Review (Dkt. 11) is GRANTED.

4. Plaintiff's Request for Assistance and for Action to Go Forward (Dkt. 12) is DENIED.

DATED: June 28, 2018

B. Lynn Winmill
Chief U.S. District Court Judge